DEPARTMENT OF THE AIR FORCE
AIR FORCE OFFICE OF SCIENTIFIC RESEARCH (AFSC)
1400 WILSON BOULEVARD
ARLINGTON, VIRGINIA 22209

27 February 1974

REPLY TO ATTN OF: PMD/Major Griffin

SUBJECT: Request for Information

TO: 63 AB Gp/DPCMA
Norton Air Force Base
CA 92409

1. In accordance with the provisions of 5 U.S.C. § 552 (1970), The Freedom of Information Act, I am making a formal request for the following official records relating to Suggestion NOR 3323-68, now on file with the Norton Incentive Awards Committee:

a. Any and all records and correspondence which were used as the basis for determining the cash award paid to Capt Griffin on or about 18 December 1969.

b. Any and all records and correspondence which were used as the basis for determining the cash award paid to Capt Griffin on a date between 1 January and 1 June 1970.

c. Any and all records and correspondence which were used as the basis for determining the cash award paid to Capt Griffin on or about 16 June 1970.

d. Any and all records and correspondence which were used by the Office of the Secretary of Defense for determining the cash award paid to Capt Griffin on or about 23 July 1971.

e. Any and all records and correspondence which were used as the basis for determining the intangible benefits cash award on or about 21 July 1972.

f. Any and all records and correspondence which were used as the basis by Lt Gen K W Schultz in making his determination on 11 June 1973 to deny Capt Griffin's request for reconsideration of his cash award for Suggestion NOR 3323-68.

2. It is my understanding that you have these records in your possession since you are required by AFM 900-4, para. 7-2 to retain these records in your suggestion file for two years after the close of the year in which final action was taken on the subject suggestion.

7

3. I request that these records be furnished at no charge under AFR 12-32, Table 1, Ref. No. 7.

James R Griffin

JAMES R. GRIFFIN, Major, USAF
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

MN/Brig Gen Martin/is/24May73

24 MAY 1973

MN

Captain James R. Griffin - Suggestion NOR 3323-68

SAMSC/CC (Lt General Schultz)

1. The SAMSO/Norton Incentive Awards Panel has been convened to reevaluate the incentive award to Captain Griffin, at your request. The Awards Panel had access to all current correspondence pertaining to this award. The Panel has re-affirmed its recommendation that the award has been properly computed and that no additional compensation is due Capt Griffin for this suggestion.

2. A copy of the Panel's recommendation to me is attached for your information and use as you see fit.

ABNER B. MARTIN
Brigadier General USAF
Deputy for MINUTEMAN

1 Atch
MNE Memo, dtd 24 May 73, same subject

DEPARTMENT OF THE AIR FORCE
SPACE AND MISSILE SYSTEMS ORGANIZATION (AFSC)
NORTON AIR FORCE BASE, CALIFORNIA 92409

24 May 1973

MNE

Captain James R. Griffin - Suggestion NOR 3323-68

MN/Brig Gen Abner B. Martin

1. The SAMSO/Norton Incentive Awards Panel reconvened as requested to review the subject suggestion. They had all of the correspondence generated to date at their disposal. Their efforts to recompute the award within the boundaries and intent of AFM 900-4 have consistently led to a lesser award than was computed in 1969.

2. The Panel agreed with Colonel Taylor's (SAMSO/SJA) reasoning that tangible benefits for this suggestion cannot be calculated under paragraph 5-3b(1)(b), AFM 900-4, as there was no appreciable high installation cost. (A high installation cost is a prerequisite for averaging annual benefits over a period of years.) The Panel also agreed with Colonel Taylor that tangible benefits must be calculated under paragraph 5-3b(1)(a) (the first full year of operation).

3. Captain Griffin had requested a recomputation to the effect that the first 12 months of operation were not continuous. The regulation cites four determining factors to extend the time period beyond the first 12 months. These are: trial periods, deferred implementation, a wider scope of application, or intermittent periods of use. The Panel determined that none of these apply. There was no trial period; the implementation of his suggestion was not deferred (the Panel is using the initial assembly and checkout date to begin a 12 month period of operation); Captain Griffin submitted his suggestion for Wings III, II, and V, the total scope of application and therefore a wider scope of application does not apply; and to recognize intermittent periods of use in this case would require recomputation of awards each time the suggestion was incorporated over a period of 6 or 7 years. The Panel concluded that the operation was continuous from the start of installation and the Panel could not find any valid reasons for accepting a time period greater than 12 months.

4. Paragraph 5-3b(1)(a) dictates that tangible benefits be calculated on the basis of the estimated net benefits for the first full year of the "operation". Due to the nature of Captain Griffin's suggestion and the method of implementation, the Panel determined, by the only avenue left open in the manual, that the first full year of operation applicable to the implementation of the suggestion could only be calculated from the start of assembly and checkout of the first squadron in Wing III. Using this start date of January 12, 1970 the first squadron of Wing III was completed and one-third of the second squadron was in the assembly and checkout phase within one calendar year. (Wing III Squadron 2 commenced assembly and checkout on 28 October 1970. This was 75 days prior to the termination of the first year of operation or approximately one-third of the implementation of Squadron 2.) Squadron 3 did not start assembly

and checkout until after 11 January 1971. Bearing in mind that the total savings for Squadrons 1, 2, and 3 was 13.6 million dollars, one-third of that savings accrued for the implementation in Squadron 1 and one-ninth of that total savings had accrued in Squadron 2. The total first year savings therefore would be one-third plus one-ninth or four-ninths of 13.6 million dollars which is approximately 6.1 million dollars. The Panel has determined there is no other equitable way to compute the first year savings.

5. The Panel did not feel that using contractual estimated total net savings was proper. The Panel determined that the regulation was specifically written so as to prevent computation of awards on long term contractual savings by specifying "the first full year of operation". Contracts would apply to many years of use and such a computation is not in consonance with the intent of the regulation. Captain Griffin's request to recompute contractually leads to an average first year savings of 7.8 million dollars, however, the manual does not recognize or address this type of computation for an award. Regardless of the statement in paragraph 5-1b(3) which says in this case, to wit: "The award may be based on the net tangible benefits," the award still must be calculated under the provisions of paragraph 5-3, "Computing Awards". The net tangible benefits, therefore, were used to compute the award, but, and in accordance with all provisions of the manual, only the net tangible benefits realized during the first full year of operation were considered. I feel the Panel has adequately fulfilled the Air Force obligation to Captain Griffin by a tangible benefits award based upon a first year estimated savings of 6.8 million dollars.

6. The SAMSO Panel presented their recommendations of intangible benefits to General Martin and it was their joint determination that the intangible benefits were best described by the manual as being of substantial value and general extent of application. Subsequent evaluation of the intangible benefits and the description of the value of benefits contained in AFM 900-4, page 5-7 bear out the Panel's original determination. The suggestion best fits the Substantial/General categories, being "an appreciably beneficial application involving a substantial avoidance of a major modification" which effects "the mission of several major commands".

Charles W. Bradley

CHARLES W. BRADLEY, Lt Colonel, USAF
Chairman, SAMSO/Norton
Incentive Awards Panel

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS SPACE AND MISSILE SYSTEMS ORGANIZATION (AFSC)
LOS ANGELES AIR FORCE STATION, PO BOX 92960, WORLDWAY POSTAL CENTER
LOS ANGELES, CALIFORNIA 90009

REPLY TO ATTN OF: CC

11 MAY 1973

SUBJECT: Captain James R. Griffin - Suggestion NOR 3323-68

TO: SAMSO/MN/Brig General Martin

1. Attached is a copy of the correspondence I've received from Captain Griffin regarding reconsideration and recomputation of the awards granted him for the subject suggestion. Also attached is the SAMSO/JA memo to me of 16 April 1973 regarding the case.

2. Even though the record reflects that you as well as the SAMSO/Norton Incentive Awards Panel have previously considered and denied Captain Griffin's requests, I want to be sure that the decision I make in the case is based on current, factual information.

3. It is therefore desired that the Panel be convened to review the suggestion file and the information attached to this letter; and, that the Panel Chairman send me a written report outlining the rationale and basis for the Panel's award decisions and denials of Captain Griffin's requests for recomputation.

SIGNED
KENNETH W. SCHULTZ
Lt General, USAF
Commander

2 Atch
1. Capt Griffin's ltrs 9 Mar and 23 Feb 73 w/Atch
2. SAMSO/JA Memo, 16 Apr 73

Copy to: 63ABG/DPCM w/o Atch

13501 Attleboro Court
Apt. #12
Laurel, Maryland 20810

9 March 1973

COMMANDER
Headquarters SAMSO
Worldway Postal Center
Los Angeles, California 90009

Dear General Schultz:

Reference the attached letter concerning my grievances on suggestion NOR 3323-68. I have just reviewed this letter and discovered an editing error in paragraph four. This paragraph should read:

"The basic contract -0042 covered the Force Modernization effort required for the first squadron at Wing III and a Supplemental Agreement, PO50, was issued against this contract to cover the Force Modernization of the second and third squadrons at Wing III. The effective date of PO50 is 4 June 1970, and falls within the first 12 months after implementation of my suggestion by contract -0042. Therefore, if paragraph 5-1.b.(3) is ignored and paragraph 5-3.b.(1) is used to determine my award for tangible benefits, the award should be based on $13.617 million, the total savings realized at Wing III. This savings would result in an award for tangible benefits of $14,715 in lieu of the $7,905 I have received thus far."

I deeply regret that I did not discover this mistake prior to submitting the letter and apologize for any inconvenience that may have resulted. Please advise me if I can provide additional clarification on this matter.

Sincerely,

James R. Griffin, Capt. USAF
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

Attachment: Letter dated 28 February 1973

CC: MNE w/o attch.
63ABGp/DPCMA w/o attch.

13501 Attleboro Court
Apt. #12
Laurel, Maryland - 20810

28 February 1973

COMMANDER
Headquarters SAMSO
Worldway Postal Center
Los Angeles, California -90009

Dear General Schultz:

During April 1968, I submitted a suggestion that deleted the requirement to relocate the autocollimator bench during the MINUTEMAN Force Modernization Program by installing a periscope to relocate the azimuth reference light for the MINUTEMAN III. This new concept was reported in the Air Force Cost Reduction Program as an "in-house" Value Engineering Change and Air Force Auditors validated the resulting savings at $45.3 million. I have received monetary awards for this suggestion in the amount of $8,905; however, I contend that the provisions of AFM 900-4 authorizes a higher monetary award. I have requested the Norton AFB Incentive Awards Committee to reconsider their position on this suggestion and appealed their final position to your Deputy for MINUTEMAN, Brig. General Martin. The purpose of this letter is to appeal this grievance to you in accordance with the provisions of AFR 123-11.

My main grievance, at this time, is that the provisions of AFM 900-4 paragraph 5-1.b.(3) were not used to compute the amount of my award for tangible benefits. This paragraph states that "If a suggestion concerns the improvement of materials or services being purchased by the Air Force under contract and the change has been authorized and referred to the contractor by the appropriate Air Force official, the suggestion may be considered for a cash award based on the net tangible or intangible benefits realized by the Air Force." MINUTEMAN SPO Program Directive 68-5, dated 16 August 1968, directed that the "Periscope Concept" be deployed during the Force Modernization of Wings III, II, and V and the NET tangible benefits realized by the Air Force was $45.3 million. Also, an additional $20 million savings was realized in the Silo Upgrade Program at Wing V when the decision was made to utilize the periscope and delete the requirement for MINUTEMEN II compatibility. (Reference MMMG letter dated 18 April 1972 and SPO briefing to Gen. Miller in April 1971.) Using a NET savings of $65.39 million, my award to tangible benefits should be $66,495 instead of $7,905.

The Incentive Awards Committee cites paragraph 5-3.b.(1) of AFM 900-4 as the basis for my award for tangible benefits. I agree that this paragraph is the one usually used to determine awards for tangible benefits effecting normal Air Force operations; however, I contend that my suggestion falls within the special provisions of paragraph 5-1.b.(3). In any case, the position of the Incentive Awards Committee is not even in accordance paragraph 5-3.b(1)(a) or (b). I agree that my suggestion was adopted by MINUTEMAN SPO Program Directive 68-5 dated 16 August 1968 and that the savings that resulted during the first 12 months following this date includes only the savings realized from the Force Modernization of the first squadron at Wing III. However, paragraph 5-3.b.(1)(a) states that "...The first full year is not necessarily the first 12 months after the date the contribution is adopted or authorized to be placed in use. Trial periods, deferred implementation, a wider scope of application and intermittent periods of use must also be considered in determining the total value of the improvement..." This suggestion was implemented by contract F04701-68-C-0042 which was signed on 17 September 1969 with an effective date of 18 July 1969. I consider the period between this contract and the date of MINUTEMEN SPO Program Directive 68-5 to be a period of "deferred implementation."

The basic contract -0042 covered the Force Modernization effort required for the first squadron at Wing III and a Supplemental Agreement, P050, was issued against this contract to cover the Force Modernization of the second and third squadrons at Wing III. The effective date of P050 is 4 June 1970, and falls within the first 12 months after implementation of my suggestion by contract -0042. Therefore, if paragraph 5-1.b.(3) is ignored and paragraph 5-3.b.(1) is used to determine my award for tangible benefits*of $14,715 in lieu of the $7,905 I have received thus far.

In conclusion, I would like to point out that if one of the MINUTEMAN contractors had submitted this change as a Value Engineering Change Proposal the government would have been legally bound to share the savings that resulted from not only the Force Modernization Program at Wings III, II, and V but also the Silo Upgrade Program at Wing V and any follow-on Wings that employ the periscope concept. Assuming a 50-50 split, which is common in the contracts with which I am familiar, the contractors share of the total savings would have exceeded $32 million to date. I am convinced that your review of the provisions and intent of AFM 900-4 will support my position and stand ready to provide you with any additional information you might require.

Sincerely

James R. Griffin

James R. Griffin
Capt. USAF
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

Attachment: My file on suggestions
NOR 3323-68

CC: MNE w/o attch.
63ABGp/DPCMA w/o attch.

18 OCT 1972

Captain James R. Griffin
13501 Attleboro Court
Apt #12
Laurel, Maryland 20810

Dear Captain Griffin

Unfortunately, the letter you received from 63 ABGp/DPCMA on your suggestion NOR-3323-68 did not adequately reflect my participation in the decision process. At the request of the SAMSO/Norton Incentive Awards Panel I personally reviewed all of the correspondence on your suggestion as well as guidance provided in AFM 900-4.

I determined that the original calculations of $6.8 million savings and $7,905 award were in accordance with the manual. I therefore recommended no further award based on tangible savings. Your suggestion was adopted in PMD 68-5 12 Aug 1968 and the supplemental agreement for the second and third squadrons of Wing III was dated 4 Jun 1970. Therefore the only tangible savings during the first 12 months after the date your suggestion was adopted are those for which you have already received a properly calculated award.

I am sure you are aware that AFM 900-4 allows some judgement in determining the value of benefit and the extent of application for calculation of tangible awards. After a review of all correspondence relating to your suggestion and the definitions contained on page 5-7 AFM 900-4, I believe your suggestion more properly fits the definitions of substantial value of benefit and general extent of application. You have already received $1000 for intangible benefits which is the upper limit of the range for substantial general benefits (table 5-2, AFM 900-4).

Please be assured that I have given this matter my personal attention. I am sure that your participation in the Air Force Suggestion Program has been appreciated and has proved a rewarding experience for you.

Sincerely

SIGNED

ABNER B. MARTIN
Brigadier General, USAF
Deputy for MINUTEMAN

1 Atch
MM Ltr to 63 ABGp/DPCMA

✓Cy to: 63 ABGp/DPCMA

MNL Sign

Lt Col Herriott MNE 6631 pro

Suggestion #NOR-3323-68 (Capt Griffin) 16 Oct 1972

1. General Martin received the attached letter from Captain James R. Griffin questioning the amount he was awarded for tangible and intangible benefits from his suggestion on Force Modernization of Wings II, III, and V. The letter sent by 63 ABGp/DPCMA to Captain Griffin did not adequately reflect the fact that General Martin had already personally participated in the decision announced in the letter to Captain Griffin. MNE has provided certain additional information which we believe are answers to Captain Griffin's questions addressed to General Martin.

2. Recommend General Martin sign the attached letter to Captain Griffin.

JUDSON A. HERRIOTT, Lt Colonel, USAF
Executive Officer
Deputy for MINUTEMAN

2 Atch
1. Ltr from Capt Griffin
2. Suggested Ltr to Capt Griffin

13501 Attleboro Court
Apt 12
Laurel, Maryland 20810
7 Oct 1972.

DPCMA
63d Air Base Group (MAC)
Norton AFB, California 92409

Dear Sir:

This letter is to advise you I have received your letter dated 3 Oct 72; Subject, " Suggestion NOR-3323-68 Force Modernization of Wings II, III, and V" and do not concur with your findings.

I have obtained legal advice on this matter and my lawyer feels we have ample grounds for suit. Therefore I advise you to maintain a complete file on this suggestion until I have had time to exhaust all avenues of appeal within and outside the Air Force.

Sincerely

James R. Griffin

James R. Griffin Capt USAF
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

DPCMA 3 Oct 72

Suggestion NOR-3323-68 Force Modernization of Wings II, III, and V

Capt James R. Griffin
13501 Attleboro Court
Apt #12
Laurell, Maryland 20810

1. Subject suggestion was reviewed by the SAMSO Incentive Awards Panel, as you requested, in regard to increased tangible savings and intangible benefits. The results of the review are as follows:

a. In accordance with para 5-3b(1), AFM 900-4, tangible savings of $6.8 million were considered proper, and award of $7,905 based on this saving accurate.

b. In regard to the intangible benefits, it was determined that the $1,000 award was appropriate.

c. Considerable deliberation had ensued in arriving at the final determination of resultant savings and award action. The total award of $8,905 is considered proper and accurate. Therefore, it was determined that this review would be considered as closing action on this suggestion and the case closed.

2. Your participation in the Air Force Suggestion Program has been appreciated.

IRENE M. SCHILLER
Program Manager
Incentive Awards Committee

DEPARTMENT OF THE AIR FORCE
SPACE AND MISSILE SYSTEMS ORGANIZATION (SC)
[N]ON AIR FORCE BASE, CALIFORNIA 92

2 OCT 1972

[R]EPLY TO [A]TTN OF: MN

[SU]BJECT: Suggestion NOR-3323-68 Force Modernization of Wings II, III, and V

TO: 63 ABGp/DPCMA

1. At the request of SAMSO/DPC I have reviewed all of the correspondence relating to the above mentioned suggestion as well as the guidance contained in AFM 900-4. I have determined, in terms of tangible benefits, that the original processing of the suggestion was proper and that the benefits were properly calculated to be $6.8 million, in accordance with paragraph 5-3b(1). The $7,905 award paid to Captain Griffin was adequate in accordance with the manual and no further award for tangible benefits is recommended.

2. In the area of intangible benefits I have determined that the suggestion has substantial general benefits. Such benefits have a maximum allowable award of $1,000. Captain Griffin has been awarded $1,000 locally for intangible benefits and therefore no additional award for intangible benefits is recommended.

3. During my deliberations on this matter the suggestion file and AFM 900-4 were discussed with Lt Colonel Herriott and Mr. Swanson of the SAMSO/Norton Incentive Awards Panel. The Panel agrees with my interpretation. The matter is considered closed.

FOR THE COMMANDER

ABNER B. MARTIN
Brigadier General, USAF
Deputy for MINUTEMAN

Defendant's Exhibit 2